FILED
DEC 04 2018
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:                          )    Case No. 18-25405-B-7
                                )
ALYSSA RENAE BRADFORD,          )    DC No. PLC-1
                                )
                                )
                    Debtor(s).  )
_____)

**NOT FOR PUBLICATION**

**MEMORANDUM DECISION REGARDING MOTION FOR SANCTIONS FOR VIOLATION
OF THE AUTOMATIC STAY**

I.    **Introduction**

     The court has before it a *Motion for Violation of the
Automatic Stay by ASAP Motors, Inc., and T. Grant & Associates,
Inc.,* filed by debtor Alyssa Renae Bradford.  The debtor seeks to
hold ASAP Motors and T. Grant, and their respective principals,
in contempt for willfully violating the automatic stay of
§ 362(a) of the Bankruptcy Code in the course of repossessing her
vehicle.  A preliminary hearing was held on October 2, 2018.  An
evidentiary hearing was held on November 19, 2018.  Peter
Cianchetta, Esq., appeared for the debtor.  Waltheq aka "Tito"
Abdelhaq of ASAP Motors, Inc., and Tim Grant of T. Grant and
Associates, Inc., appeared pro se.

     Debtor's exhibits were all admitted for their full probative
value without objection.  The court also takes judicial notice of
the docket in this Chapter 7 case and in the debtor's first
Chapter 7 case, no. 18-21985.  The debtor's first Chapter 7 case
was filed on April 2, 2018, and dismissed on August 6, 2018.  The

debtor filed the petition that commenced this second Chapter 7 case on August 28, 2018.

This memorandum decision constitutes the court's findings of fact and conclusions of law. See Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052, 9014(c).

## II.  Jurisdiction

Federal subject-matter jurisdiction is founded on 28 U.S.C. § 1334. Enforcement of the automatic stay arises under Bankruptcy Code § 362 and is a core proceeding that may be heard and determined by a bankruptcy judge. See 28 U.S.C. § 157(b)(1)(G). To the extent that this proceeding may ever be determined to be a matter that cannot be heard and determined of right by a bankruptcy judge, the parties nevertheless agreed that it may be heard and determined by a bankruptcy judge. See 28 U.S.C. § 158(c)(2). Venue is proper. See 28 U.S.C. § 1409.

## III. Findings of Fact

Mr. Abdelhaq is an officer and director of ASAP Motors, Inc., a California corporation. He is the corporation's chief executive officer, secretary, and chief financial officer. At one point he was also a member of Legacy Auto Sales, LLC, a California limited liability corporation.

Mr. Grant is an officer and director of T. Grant and Associates, a California corporation. He is the corporation's chief executive officer and chief financial officer.

- 2 -

Sometime in 2017 the debtor purchased a 2016 Chrysler 200 from Mr. Abdelhaq at ASAP Motors.  ASAP Motors arranged financing for the debtor through Top Finance Company, Inc.  Terms of financing included a "one pay recourse" meaning that ASAP Motors was obligated to repurchase the finance contract if the debtor missed one payment.

The schedules filed in this Chapter 7 case state that the debtor's vehicle was sold back to the "dealer" the day before her first Chapter 7 case was filed on April 2, 2018.  The debtor's schedules also identify a repurchase date of "4/7/2018."  The debtor further testified in her September 18, 2018, declaration that Top Finance received a $12,342.52 payment on April 6, 2018. The point is, sometime between April 1, 2018, and April 7, 2018, ASAP Motors repurchased the finance contract from Top Finance giving ASAP Motors and Mr. Abdelhaq the right to enforce the contract and lien on the debtor's vehicle associated with it.

There is no indication what, if anything, ASAP Motors or Mr. Abdelhaq did to enforce the finance contract and the associated lien on the debtor's vehicle between early April 2018 (after the finance contract was repurchased) and early August 2018 (when the debtor's first bankruptcy case was dismissed). ASAP Motors is listed in the schedules filed in the debtor's first Chapter 7 case; however, the docket does not reflect an appearance by either ASAP Motors or Mr. Abdelhaq.  Mr. Abdelhaq testified that he was aware of the debtor's first bankruptcy case and its eventual dismissal.  That may explain the absence of any

1 | collection or repossession activity between April and August of
2 | 2018.

3 | On August 10, 2018, four days after the debtor's first
4 | bankruptcy case was dismissed on August 6, 2018, Mr. Abdelhaq
5 | obtained a California DMV Certificate of Repossession.  On or
6 | about August 20, 2018, Mr. Abdelhaq contacted T. Grant to
7 | repossess the debtor's vehicle for ASAP Motors.  Mr. Abdelhaq
8 | also retained an individual by the name of Scott Sanders to
9 | locate and repossess the debtor's vehicle on behalf of ASAP
10 | Motors.  As Mr. Grant explained, Mr. Sanders was authorized to
11 | repossess vehicles in his individual capacity for up to two car
12 | dealerships at a time without a license.  ASAP Motors paid Mr.
13 | Sanders a fee and Mr. Sanders regularly reported his activities
14 | directly to Mr. Abdelhaq.

15 | Having initiated the repossession process following the
16 | dismissal of the debtor's first Chapter 7 case, on August 24,
17 | 2018, Mr. Abdelhaq transferred the debtor's vehicle from ASAP
18 | Motors to Legacy in satisfaction of a debt.  Mr. Abdelhaq
19 | effectuated that transfer pursuant to the following documents:
20 | (1) a California DMV Vehicle/Vessel Transfer and Reassignment
21 | Form that identifies ASAP Motors as the seller and Legacy as the
22 | buyer of the debtor's vehicle; (2) a California DMV Odometer
23 | Disclosure Form; and (3) a Contract Reassignment Notice which
24 | informed the debtor that Legacy was the new owner of her

- 4 -

1   vehicle.[1]

2         The debtor filed the petition that commenced this Chapter 7

3   case on August 28, 2018, four days after ASAP Motors transferred

4   her vehicle to Legacy on August 24, 2018.  The debtor valued her

5   vehicle at $10,300.00 in schedules filed with the petition.

6         Early in the afternoon on August 30, 2018, Mr. Sanders was

7   informed of the debtor's second bankruptcy filing, provided a

8   case number, was told that the automatic stay was in effect, and

9   was also told that attempts to repossess the debtor's vehicle

10  must stop.  On August 30, 2018, the debtor was followed to the

11  point where she had to have someone with her at all times.  Mr.

12  Sanders thereafter stalked and photographed the debtor's house on

13  September 1, 2018.  On September 3, 2018, the debtor believes

14  that Mr. Sanders posed as a Stockton police officer claiming to

15  have a warrant that authorized him to search for her vehicle in

16  her cousin's garage.  That same date, Mr. Sanders also reportedly

17  went to the debtor's sister's house in an effort to search

18  through her garage as well.  And on September 4, 2018, the

19  debtor's mother was followed on her way to the Modesto bankruptcy

20  court.

21

22  _____

23        [1]Mr. Abdelhaq disputed his signature on a number of
    documents.  He also testified that he "never" signs documents as
    "Tito."  However, upon cross-examination and questioning by the

24  court he admitted that he signed the Contract Reassignment Notice
    as "Tito Haq."  Mr. Abdelhaq's contradictory testimony is

25  consistent with his overall lack of credibility.  Mr. Abdelhaq's
    blanket assertion that "everything" stated by the debtor, the

26  debtor's attorney, and Mr. Grant is a lie also reinforces his
    lack of credibility.

27

28                              - 5 -

Mr. Sanders eventually located the debtor's vehicle on September 4, 2018, at which point he called T. Grant and directed it to repossess the vehicle. T. Grant repossessed the debtor's vehicle at approximately 7:30 a.m. on September 4, 2018, and thereafter towed it on a "dolly" - a device that elevates the vehicle's wheels off the ground - to its secured lot. Mr. Grant testified that neither he nor anyone at T. Grant were aware of the debtor's bankruptcy filing when the debtor's vehicle was repossessed on September 4, 2018. Mr. Grant's testimony on that point is credible and the court believes it.

At approximately 8:30 p.m. on September 4, 2018, the debtor learned that her vehicle was repossessed. She received a text message from Mr. Sanders informing her of the repossession and a picture of the vehicle on a "dolly" attached to a tow truck. Mr. Sanders' text message also informed the debtor that she would be notified where she could retrieve her vehicle and how much she would have to pay to retrieve it.

When the debtor's vehicle was repossessed, it contained almost all of her personal belongings. The debtor testified that she stored her belongings in the vehicle so that they would not be stolen from the room she rented. Notable among the debtor's belongings in her vehicle were eleven years of family photographs the debtor described as "priceless."

Mr. Sanders sent the debtor additional text messages between September 5-7, 2018. A number of those text messages were profane, and at least one was racially-charged. Mr. Sanders'

text messages also threatened to dispose of the debtor's personal property (including her legal papers), made threatening demands for the key to the debtor's vehicle, berated the debtor, taunted the debtor with his purported prowess in his ability to locate and repossess her vehicle, and confirmed that he was paid by ASAP Motors.

The debtor's attorney contacted T. Grant at approximately 1:45 p.m. on September 7, 2018, at which time he spoke with an individual identified only as "Josh." The debtor's attorney informed "Josh" of the debtor's bankruptcy filing and that T. Grant was holding the debtor's vehicle.

ASAP Motors and Mr. Abdelhaq took possession of the debtor's vehicle at approximately 2:45 p.m. on September 7, 2018. In the course of transferring possession, Mr. Grant, Mr. Abdelhaq, and another individual by the name of Josh Sampson met in Mr. Grant's office. During that meeting Mr. Grant informed Mr. Abdelhaq of the debtor's bankruptcy filing and that he confirmed the filing through PACER.[2] Mr. Sampson corroborated Mr. Grant's version of this meeting.[3] Specifically, Mr. Sampson recalled that Mr. Grant told Mr. Abdelhaq of the debtor's PACER-confirmed bankruptcy and that ASAP Motors was obligated to return the debtor's vehicle to her to which Mr. Abdelhaq responded: "[F]uck her, she hasn't

---

[2] Mr. Grant testified that he first became aware of the debtor's bankruptcy filing on September 7, 2018. His testimony is credible and the court believes it.

[3] Mr. Sampson's testimony was introduced and admitted without objection in the form of a declaration dated October 5, 2018.

1  made any payments I'm not giving her shit back, She [sic] has no
2  insurance or current registration . . . this is on me, the bk is
3  my problem, it's on me." Mr. Abdelhaq admitted that he was
4  present at this meeting but denied making the quoted statement.
5  Given Mr. Abdelhaq's lack of credibility, the court believes Mr.
6  Sampson and not Mr. Abdelhaq.

7       Sometime after 2:45 p.m. on September 7, 2018, Mr. Grant
8  called the debtor's attorney. During that call Mr. Grant
9  confirmed that T. Grant had possession of the debtor's vehicle
10 from approximately 7:30 a.m. on September 4, 2018, until
11 approximately 2:45 p.m. on September 7, 2018, when Mr. Abdelhaq
12 signed a vehicle condition report and ASAP Motors took possession
13 of the vehicle. Mr. Grant testified that he released the
14 debtor's vehicle to ASAP Motors and Mr. Abdelhaq because he
15 believed they were the vehicle's legal owner, he believed that he
16 could only release a repossessed vehicle to its legal owner
17 absent the legal owner's consent to release it to another
18 individual, and he did not have ASAP Motors' or Mr. Abdelhaq's
19 consent to release to the debtor's vehicle to any other person.
20 During that call Mr. Grant also offered to make the debtor's
21 personal property available to her without condition or cost.

22      The debtor did not regain possession of her vehicle until on
23 or about October 12, 2018, which is ten days after the court
24 ordered possession "immediately" restored to the debtor in its
25 oral order of October 2, 2018, and eight days after its written
26 order of October 4, 2018. Mr. Abdelhaq attributed the delay to

27

1  the time it took  ASAP Motors to obtain the vehicle back from
2  Legacy.  Mr. Abdelhaq testified the vehicle was repurchased from
3  Legacy for $4,200.00.

4      The debtor's vehicle was not returned to her in the same
5  condition it was in when it was repossessed.  The debtor
6  testified that before her vehicle was repossessed it was
7  mechanically sound and operated without incident, whereas after
8  the vehicle was returned the vehicle shook (and continues to
9  shake) violently when driven over 45 miles per hour.  Several
10 warning lights (airbag and engine) also now display continuously,
11 whereas before the vehicle was repossessed those lights did not
12 come on.  And whereas tires exhibited normal wear and tear prior
13 to repossession, when the debtor's vehicle was returned to her
14 the tires appeared ripped to the point where the internal
15 structures of the tire were visible as if the vehicle had been
16 violently pushed or dragged.  There were also food and drink
17 containers in the vehicle that did not belong to the debtor
18 suggesting the vehicle had been used or driven after ASAP Motors
19 and Mr. Abdelhaq took possession of it.

20

21 IV.  **Conclusions of Law**

22      A.  **Automatic Stay Violations**

23          1.  **Relevant Legal Standard**

24      The filing of a bankruptcy petition creates an automatic
25 stay.  11 U.S.C. § 362(a).  Acts taken in violation of the
26 automatic stay are void.  Schwartz v. United States (In re

27

28                              - 9 -

Schwartz), 954 F.2d 569, 570-72 (9th Cir. 1992). Consequences

for violating the automatic stay are contempt and statutory

damages for individuals injured by any willful violation of the

automatic stay. See Havelock v. Taxel (In re Pace), 67 F.3d 187,

191-94 (9th Cir. 1995).

As to statutory damages, any individual victim of a willful

stay violation may recover actual damages, including costs and

attorney's fees, as well as punitive damages:

> [A]n individual injured by any willful violation of a
> stay provided by this section shall recover actual
> damages, including costs and attorneys' fees, and, in
> appropriate circumstances, may recover punitive
> damages.

11 U.S.C. § 362(k)(1).

An automatic stay violation is willful if (1) the party knew

of the stay and (2) the party's actions that violated the stay

were intentional. Knupfer v. Lindblade (In re Dyer), 322 F.3d

1178, 1191 (9th Cir. 2003); Goichman v. Bloom (In re Bloom), 875

F.2d 224, 227 (9th Cir. 1989).

The court initially notes that this Chapter 7 case is the

debtor's second bankruptcy case filed within one year after her

first Chapter 7 case was dismissed. There was no motion filed in

this case to extend the automatic stay beyond the date that is

thirty days after the petition date. See 11 U.S.C. §

362(c)(2)(B). That means the stay expired in its *entirety* thirty

days after the date on which the petition was filed. See 11

U.S.C. § 362(c)(3)(A); Reswick v. Reswick (In re Reswick), 446

B.R. 362, 373 (9th Cir. BAP 2011); see also Vitalich v. Bank of

_New York Mellon_, 569 B.R. 502, 509–10 (N.D. Cal. 2016); _Vassallo_
_v. Naiman_, 2012 WL 691783, *2 (E.D. Cal. 2012); _United States v._
_Weldon_, 2011 WL 13247437, *3 (E.D. Cal. 2011).

Expiration of the automatic stay means that there could be no _further_ stay violation(s) thirty days after the petition date. However, that does not mean damages from stay violations that occurred while the stay was in effect are limited to the same period. As the court explained in _Sundquist v. Bank of America,_ _N.A._, 566 B.R. 563 (Bankr. E.D. Cal. 2017), _vacated in part on_ _other grounds_, 580 B.R. 536 (Bankr. E.D. Cal. 2018):

> Cognizable effects of a violation of the automatic stay may linger after the formal expiration of the stay. For example, the stay with respect to an individual debtor expires upon entry of discharge or dismissal of the case. 11 U.S.C. § 362(c)(2).
>
> Nevertheless, consequences directly attributable to the violation of the stay before its expiration may continue to be visited upon a debtor for an additional period of time. _Snowden v. Check Into Cash of Wash.,_ _Inc. (In re Snowden)_, 769 F.3d 651, 659 & 662 (9th Cir. 2014).
>
> Hence, liability for a stay violation continues at least until full restitution is actually made or, if after the expiration of the stay, the court orders full restitution. _Snowden_, 769 F.3d at 659 & 662 (ambiguous settlement offer does not terminate accrual of liability for stay violation).

_Sundquist_, 566 B.R. at 586.

    2.    Parties Charged With Automatic Stay Violations

        a.    T. Grant and Mr. Grant

No evidence was presented that T. Grant or Mr. Grant were aware of the debtor's bankruptcy filing when T. Grant was directed to repossess the debtor's vehicle. And based on Mr.

1  Grant's credible testimony, the court concludes that T. Grant and

2  Mr. Grant first became aware of the debtor's bankruptcy filing

3  sometime after 1:45 p.m. on September 7, 2018. Therefore, T.

4  Grant and Mr. Grant will not be held in contempt because they did

5  not *willfully* violate the automatic stay when they repossessed

6  the debtor's vehicle on September 4, 2018.[4]

7      Learning of the debtor's bankruptcy filing on September 7,

8  2018, imposed an affirmative obligation on T. Grant and Mr. Grant

9  to remedy any stay violation resulting from repossession (and

10  retention) of the debtor's vehicle such as, for example, by

11  returning the vehicle to the debtor or her attorney. Dyer, 322

12  F.3d at 1192; Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210,

13  1215 (9th Cir. 2002). They, of course, did not do that.

14  Instead, aware of the debtor's bankruptcy case, inasmuch as they

15  informed Mr. Abdelhaq of it, T. Grant and Mr. Grant released the

16  debtor's vehicle to ASAP Motors and Mr. Abdelhaq. But the

17  analysis does not end there.

18      Congress has recognized in a statutory exception that, at

19  least with respect to certain circumstances involving personal

20  property not applicable here, a violation of the automatic stay

21  _____

22  [4]Although repossession violated the automatic stay, without
knowledge of the debtor's bankruptcy filing any stay violation is

23  more in the nature of a so-called "technical" violation. See
Whatley v. Meyer Wilson, et al. (In re Chandar), 2017 WL 5484315,

24  *4 (Bankr. E.D. Cal. 2017) (citing cases). Action taken in
violation of the automatic stay is nevertheless void, Griffin v.

25  Wardrobe (In re Wardrobe), 559 F.3d 932, 934 (9th Cir. 2009),
even if the action is taken without knowledge of a bankruptcy

26  case or the stay. Carter v. Barber (In re Carter), 2016 WL

27  1704719, *4 (9th Cir. BAP 2016).

28                                  - 12 -

is not willful if a party has a good faith belief that it is
entitled to the debtor's property.  See 11 U.S.C. § 362(k)(2);
Sundquist, 566 B.R. at 587 & n.56 (recognizing limited
exception).  Under the current state of the law in the Ninth
Circuit, a similar good faith belief exception is applicable
here.

Relying on its earlier opinion in Zilog, Inc. v. Corning (In
re Zilog), 450 F.3d 996 (9th Cir. 2006), the Ninth Circuit
recently held in Lorenzen v. Taggart (In re Taggart), 888 F.3d
438 (9th Cir. 2018), that a party's subjective good faith belief
that the discharge injunction is inapplicable to its claim, even
if objectively unreasonable, insulates the entity from liability
for sanctions for civil contempt for violation of the discharge
injunction.[5]  Id. At 444.  Inasmuch as "the standard for
violations of the automatic stay and the discharge injunction are
similar, the discharge injunction cases are relevant and
persuasive [to automatic stay violations]."  Keller v. New Penn
Financial, LLC (In re Keller), 568 B.R. 118, 123 & n.4 (9th Cir.
BAP 2017) (citing Zilog, 450 F.3d at 1008 n.12).  Indeed, the
bankruptcy appellate panel recently cited Taggart in the stay
violation context for the proposition that "[e]ven an

---

[5]In so holding, Taggart significantly discounted Dyer's
statement that in determining whether a contemnor violated the
automatic stay the focus is not on subjective belief or intent to
comply.  Id. (citing Dyer, 322 F.3d at 1192).  Taggart noted that
Dyer did not hold that a creditor's subjective good faith belief
is irrelevant in the contempt analysis whereas Zilog held that a
subjective good faith belief is relevant thereby making Zilog
binding and controlling.  Id. & n.5.

- 13 -

unreasonable belief that the stay does not apply to a creditor's
claims would preclude a finding of contempt." <u>Ress Financial
Corp. v. Beaumont 1600, LLC (In re The Preserve, LLC)</u>, 2018 WL
4292023, *8 (9th Cir. BAP 2018).

Mr. Grant testified that he released the debtor's vehicle to
ASAP Motors and Mr. Abdelhaq because he believed that the
debtor's repossessed vehicle could only be released to its legal
owner unless the legal owner directed otherwise and neither Mr.
Abdelhaq nor ASAP Motors directed otherwise.  Mr. Grant's
testimony is not entirely inconsistent with California Business
and Professions Code § 7507.12(b) which states that "[n]o person
other than the legal owner may direct a repossessor to release a
vehicle without legal authority to do so."

Mr. Grant's belief regarding the person to whom a
repossessed vehicle may be released may be somewhat unreasonable
in that the debtor or her attorney could arguably be a person
other than the legal owner with authority under federal
bankruptcy law to direct the vehicle's release.  But even so, Mr.
Grant's unreasonable belief is not fatal so long as it was held
in good faith.  And the court is persuaded that it was.

The debtor's attorney spoke with "Josh" when he initially
contacted T. Grant on September 7, 2018, and disclosed the
debtor's bankruptcy case.  There is no evidence that "Josh"
informed Mr. Grant that someone purporting to be the debtor's
attorney called about the debtor's vehicle before T. Grant
released the debtor's vehicle to ASAP Motors and Mr. Abdelhaq.

But even if that could be inferred from Mr. Grant's testimony
that he learned of the debtor's bankruptcy filing on September 7,
2018, or that he confirmed the case on PACER, Mr. Grant would
(and could) not have confirmed the identity of the individual who
called "Josh" until he actually spoke with the debtor's attorney
which was after the debtor's vehicle was released.  The point is,
without a clear understanding and confirmation of the identity of
the initial caller earlier in the day, it is plausible that Mr.
Grant in good faith believed that he did not have authorization
from someone with authority other than the vehicle's legal owner
to release the debtor's vehicle to someone other than the legal
owner.  Therefore, Mr. Grant and T. Grant will not be held in
contempt because they did not *willfully* violate the automatic
stay when, on September 7, 2018, they in good faith retained and
then released the debtor's vehicle to Mr. Abdelhaq and ASAP
Motors.

And as for T. Grant's and Mr. Grant's retention of the
debtor's personal property, possession of that personal property
between September 4-7, 2018, was without notice of the debtor's
bankruptcy filing.  Again, a technical and not a willful stay
violation.  And although it is true that T. Grant remained in
possession of the debtor's personal property after September 7,
2018, Mr. Grant testified that upon learning of the debtor's
bankruptcy case he offered the debtor her personal property
without condition or charge.  T. Grant thereafter retained the
debtor's personal property only because it took the debtor two

- 15 -

1 weeks to retrieve it.  Under those circumstances, T. Grant and

2 Mr. Grant will not be held in contempt because they did not

3 *willfully* violate the automatic stay by retaining the debtor's

4 personal property.

5    b. <u>ASAP Motors and Mr. Abdelhaq</u>

6   ASAP Motors and Mr. Abdelhaq present an entirely different

7 picture.  Neither had an interest in the debtor's vehicle between

8 August 24, 2018, when ASAP Motors and Mr. Abdelhaq transferred

9 the vehicle to Legacy in satisfaction of a debt, and on or about

10 October 12, 2018, when ASAP Motors repurchased the debtor's

11 vehicle from Legacy for $4,200.00.  Without any interest in the

12 debtor's vehicle (or some other right to enforce the finance

13 contract and lien associated with it which there is no evidence

14 of) ASAP Motors and Mr. Abdelhaq had no right (and could not in

15 good faith believe they had any right) to or to repossess the

16 debtor's vehicle in satisfaction of a prepetition debt.  Yet,

17 fully aware of the debtor's bankruptcy filing and the automatic

18 stay, that is precisely what they did through a number of

19 intentional postpetition actions.

20   Mr. Abdelhaq retained Mr. Sanders to locate and repossess

21 the debtor's vehicle for ASAP Motors.  That makes Mr. Sanders an

22 agent of ASAP Motors and Mr. Abdelhaq.[6]  And since Mr. Sanders is

23

---

24   [6]No evidence was presented of any communication between Mr.
Sanders and Mr. Grant, or anyone at T. Grant, before Mr. Sanders

25 contacted T. Grant on September 4, 2018.  There also is no
evidence that Mr. Sanders informed T. Grant, or anyone at T.

26 Grant, of the debtor's bankruptcy filing when he contacted T.
Grant on September 4, 2018.  The testimony was that Mr. Abdelhaq

27

28         - 16 -

ASAP Motors' and Mr. Abdelhaq's agent, ASAP Motors and Mr. Abdelhaq may be charged with what Mr. Sanders knew and when he knew it as well as with what Mr. Sanders did in the course of locating and then repossessing the debtor's vehicle.

Mr. Sanders (and thence ASAP Motors and Mr. Abdelhaq) knew on August 30, 2018, that the debtor filed bankruptcy and that the automatic stay was in effect. ASAP Motors and Mr. Abdelhaq were again made aware of the debtor's PACER-confirmed bankruptcy filing when they took possession of the debtor's vehicle on September 7, 2018. And yet, with knowledge of the debtor's bankruptcy case and the automatic stay, through Mr. Sanders and of their own volition, ASAP Motors and Mr. Abdelhaq engaged in the following intentional acts which the court concludes are willful violations of the automatic stay:

> (1) attempting to collect a prepetition debt between August 30, 2018, and September 4, 2018, and the failure to cease such activity knowing of the automatic stay and despite absence of any interest in the debtor's vehicle after August 24, 2018;

> (2) stalking, harassing, intimidating, berating, threatening the debtor and her family members, and threatening to destroy and destroying the debtor's personal property and property of the estate;

---

retained Mr. Sanders to locate and repossess the debtor's vehicle on behalf of ASAP Motors, Mr. Sanders was acting as an unlicensed individual and not as a repossession agency, and Mr. Sanders communicated directly (and regularly) with Mr. Abdelhaq about his efforts to locate and repossess the debtor's vehicle. The point is, while T. Grant may be liable for its own tortuous conduct related to a repossession (and the court has already found no such liability here) Mr. Sanders was not T. Grant's or Mr. Grant's agent. T. Grant and Mr. Grant were also not ASAP Motor's or Mr. Abdelhaq's agent. <u>See e.g.</u>, Cal. Business and Professions Code § 7507.12(a).

- 17 -

(3) causing the debtor's vehicle to be repossessed on September 4, 2018;

(4) taking possession of the debtor's vehicle on September 7, 2018, retaining possession of the debtor's vehicle, and thereafter transferring the debtor's vehicle to Legacy.

Alone, each of these actions are sufficient to hold ASAP Motors and Mr. Abdelhaq, jointly and severally, in contempt for willfully violating the automatic stay and to assess damages against each for their willful stay violations.  Considered in their totality (and also considering that they were taken without any authority due to the absence of any interest in the debtor's vehicle) these actions exhibit a callous disregard for federal bankruptcy law and the debtor's rights as a Chapter 7 debtor, they are actions taken in bad faith, and they are actions that warrant the imposition of punitive damages.[7]

B.  Assessment of Damages for Willful Violations of the Automatic Stay

Having concluded that ASAP Motors and Mr. Abdelhaq willfully violated the automatic stay of § 362(a), the court turns to the question of § 362(k)(1) damages.

1.  Attorney's Fees and Costs

Attorney's fees and costs are a mandatory component of a § 362(k)(1) actual damages award.  The attorney's fees component includes those reasonably incurred in prosecuting a damages

---

[7]Mr. Abdelhaq's profanity-laced tirade in Mr. Grant's office when he took possession of the debtor's vehicle on September 7, 2018, is a further indication of a callous disregard for federal bankruptcy law and the debtor's rights under the Bankruptcy Code as a Chapter 7 debtor.

- 18 -

1  action for automatic stay violations.   America's Servicing Co. v.

2  Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095, 1099-

3  1101 (9th Cir. 2015).

4      As an element of her actual damages under § 362(k)(1), the

5  court will award the debtor all reasonable attorney's fees and

6  costs incurred from August 28, 2018, through and including a

7  final determination of the attorney's fees and costs award.   The

8  court will assess the reasonableness of attorney's fees requested

9  using the "lodestar" method.   See Orian v. Asef (In re Orian),

10  2018 WL 6187784, *8 (9th Cir. BAP 2018).[8]   The court will amend

11  the order entered on this memorandum decision according to its

12  ultimate award based on its determination of reasonableness of

13  attorney's fees and costs requested.

14      Any motion for attorney's fees and costs shall be filed and

15  served by **January 4, 2019**, and shall be set for hearing under

16  Local Bankruptcy Rule 9014-1(f)(1).   In order to permit the court

17  to ascertain the reasonableness of the debtor's attorney's fees

18  and costs, the following shall apply: (1) time shall be

19  calculated in tenths of an hour and not quarter hours, Denny Mfg.

20  Co. v. Drops & Props, Inc. Eyeglasses, 2011 WL 2180358, *6 (S.D.

21  Ala. 2011) (finding that billing in .25 hour increments not

22  reasonable); and (2) time entries shall not be "lumped."   In re

23  Recycling Indus., Inc., 243 B.R. 396, 406 (Bankr. D. Colo. 2000)

24  _____

25      [8]Under the lodestar method, the court determines the
    reasonable amount of fees by multiplying the number of hours
26  reasonably spent by the reasonable hourly rate of the
    professional.   Law Offices of David A. Boone v. Derham Burk (In
27  re Eliapo), 468 F.3d 592, 598 (9th Cir. 2006).

28                          - 19 -

1  (noting that lumping is universally disapproved by bankruptcy

2  courts).[9]

3          2.   Emotional Distress Damages

4      Emotional distress damages are also commonly subject to an

5  award of actual damages.  See e.g., Dawson, 390 F.3d at 1146.

6  Three elements are required for emotional distress damages: (1)

7  significant harm; (2) clearly established; and (3) with a causal

8  connection between the stay violation and the harm (as distinct

9  from anxiety and pressures of the bankruptcy process).  Snowden,

10 769 F.3d at 656-57; Dawson, 390 F.3d at 1149.  As to the first

11 element, Dawson permits proof of significant harm to be

12 established by testimony alone and by reference to egregious

13 conduct and circumstances that make it obvious that a reasonable

14 person would suffer significant emotional harm.  Id. at 1149-50.

15     Mr. Sanders held the debtor's legal papers and personal

16 property hostage by threatening to destroy both if the debtor did

17 not surrender the key to the vehicle.  The debtor's personal

18 belongings included eleven years of family photographs which the

19 debtor describes as "priceless."  Those photographs were in the

20 debtor's vehicle when it was repossessed - they are now missing.

21 It is not unreasonable to expect that threats to destroy the

22

23  _____

24      [9]Lumping, or block billing, is a timekeeping practice
    whereby multiple services are included in a single, aggregated
    time entry without any breakdown of the time spent on each
25  activity.  See In re Duta, 175 B.R. 41, 46-47 (9th Cir. BAP
    1994).  Lumping prevents the court from conducting a
26  reasonableness analysis.  See Welch v. Metro. Life Ins. Co., 480
    F.3d 942, 948 (9th Cir. 2007).
27

28                          - 20 -

debtor's personal belonging - coupled with the subsequent
discovery that priceless family photographs are now missing -
would cause the debtor to suffer significant emotional distress.

In an effort to locate the debtor's vehicle, Mr. Sanders
also stalked the debtor to the point where she felt unsafe to
travel alone.  It is not unreasonable to expect the debtor to
suffer significant emotional harm and fear arising out of such
conduct.

Mr. Sanders also sent the debtor and her close family
members a number of profane, and at least one racially-charged,
text messages in which he taunted, harassed, and berated the
debtor.  Several of those text messages are particularly
troubling.  For example, when Mr. Sanders was unable to locate
the debtor's vehicle, and then upon his realization that the
debtor had the key to the vehicle, he became agitated and
aggressive to the point where, as noted above, he threatened to
destroy the debtor's belongings.  Of greater concern, at least
one of Mr. Sanders' text messages could be read in modern urban
parlance to include a threat of physical violence against - and
harm to - the debtor.

The point is ASAP Motors and Mr. Abdelhaq retained an
individual who exhibited himself through his text messages as an
unstable and emotionally-disturbed individual lacking in good
judgment and likely prone to violence or the use of physical
force in order to make a few dollars repossessing cars.  Under
those circumstances, a reasonable person receiving the text

- 21 -

1  messages that were sent by Mr. Sanders while acting as an agent

2  for ASAP Motors and Mr. Abdelhaq would suffer significant

3  emotional distress.  Therefore, the court awards the debtor

4  **$5,000.00** in emotional distress damages.

5      3.  <u>Lost Property Damages</u>

6      Actual damages under § 362(k)(1) include both physical and

7  economic damages.  <u>Dawson</u>, 390 F.3d at 1149.  Readily

8  ascertainable damages commonly include the value of personal

9  property lost, the cost of a replacement vehicle, and lost wages.

10 <u>Sundquist</u>, 566 B.R. at 587.

11     The court initially notes that the debtor testified she

12 missed at least three job interviews as a result of her vehicle

13 being repossessed.  However, no evidence of the economic value of

14 those missed interviews was presented.  Therefore, the court

15 awards no economic damages for the debtor's lost employment

16 opportunities.  Nevertheless, damages for the actual loss of

17 property are warranted in at least two instances.

18     The debtor offered a list of personal belongings which she

19 ascertained were missing from her vehicle when she regained

20 possession of it from ASAP Motors on or about October 12, 2018.

21 The list was admitted without objection.  The list also includes

22 the debtor's opinion of the value of her missing personal

23 belongings.  The debtor's opinion of value is admissible, Fed. R.

24 Evid. 701, and in the absence of contrary evidence it is

25 conclusive.  <u>Enewally v. Wash. Mut. Bank (In re Enewally)</u>, 368

26 F.3d 1165, 1173 (9th Cir. 2004).  Therefore, the court awards the

27

28                          - 22 -

debtor **$1,178.00** as actual damages for the personal property the debtor lost as a result of her vehicle being repossessed.

The court is also persuaded that the debtor's vehicle was not returned to her in the same condition it was in when it was repossessed and that the debtor's vehicle was significantly damaged after ASAP Motors and Mr. Abdelhaq took possession of it from T. Grant on September 7, 2018. The debtor testified that her vehicle exhibited no mechanical problems before it was repossessed whereas it now shakes violently when driven over 45 miles per hour. The debtor also testified that no warning lights came on before the vehicle was repossessed whereas the vehicle now displays numerous warning lights. Tires on the vehicle were also damaged as if the vehicle had been dragged or pulled. In short, the court is persuaded that the debtor's vehicle is now mechanically unsound, largely inoperable, and at a very minimum unsafe to drive in its current post-repossession and retention condition.

The debtor valued her vehicle at $10,300.00 in her schedules. Schedules have evidentiary weight. _Perfectly Fresh Farms, Inc. v. U.S. Dep't of Agric._, 692 F.3d 960, 969 (9th Cir. 2012). At a minimum, they are signed under penalty of perjury and are admissible as evidentiary admissions. _See_ Heath v. American Express Travel Related Services, Inc. (In re Heath), 331 B.R. 424, 431 (9th Cir. BAP 2005).

ASAP Motors repurchased the debtor's vehicle from Legacy for $4,200.00 on or about October 21, 2018. The price paid to

purchase (or in this case repurchase) the vehicle may be viewed
as indicative of its current value.  Tyner v. Nicholson (In re
Nicholson), 435 B.R. 622, 634 (9th Cir. BAP 2010) (stating that
"[a]n offer to purchase an asset would normally constitute strong
evidence of the asset's value, even if there is only one such
offer.").

Considering the initial scheduled valuation and the current
valuation based on the reacquisition price, the debtor will be
awarded **$6,100.00** as the loss in the value of her vehicle
resulting from ASAP Motors' and Mr. Abdelhaq's willful stay
violations.  These damages shall be satisfied in one of two ways:
(1) the debtor shall be paid **$6,100.00** and the debtor shall
thereafter be permitted to redeem her vehicle for a **$4,200.00**
payment to ASAP Motors, the lien on the vehicle shall be
released, and the vehicle's title provided to the debtor; or,
alternatively, (2) the debtor may be paid **$1,900.00**, the
vehicle's title shall be provided to the debtor, and the lien on
the vehicle released.

### 4.  Punitive Damages

An individual injured by a willful violation of the
automatic stay may, in addition to compensatory damages, be
awarded punitive damages under § 362(k)(1).  Section 362(k)(1)
permits an award of punitive damages "in appropriate
circumstances."  In the Ninth Circuit, "appropriate
circumstances" for a punitive damages award exist when there is
"some showing of reckless or callous disregard for the law or the

- 24 -

1  rights of others." <u>Bloom</u>, 875 F.2d at 228. That standard is met

2  when there is proof of conduct that is malicious, wanton, or

3  oppressive, <u>Snowden</u>, 769 F.3d at 657, which, in turn, is met upon

4  a showing of bad faith. <u>Sundquist</u>, 566 B.R. at 588. The

5  bankruptcy court has considerable discretion in granting or

6  denying punitive damages under § 362(k)(1). <u>Bloom</u>, 875 F.2d at

7  228. Evidence here supports an award of punitive damages.

8        Without any apparent authority or right to do so because

9  they lacked any interest in the debtor's vehicle after August 24,

10  2018, and with knowledge of the debtor's bankruptcy filing and

11  the automatic stay, ASAP Motors and Mr. Abdelhaq retained a

12  questionable individual who stalked, threatened, intimidated, and

13  berated the debtor in their joint efforts to locate and repossess

14  the debtor's vehicle. When informed of the debtor's PACER-

15  confirmed bankruptcy case and that ASAP Motors had an obligation

16  to return the debtor's vehicle to her because of her bankruptcy

17  filing, Mr. Abdelhaq clearly (and profanely) stated in no

18  uncertain terms that he did not care, that he had no intention of

19  complying with federal bankruptcy law, and that any consequences

20  of ASAP Motors' repossession and retention of the debtor's

21  vehicle were on him. ASAP Motors and Mr. Abdelhaq will now bear

22  those consequences.

23        ASAP Motors and Mr. Abdelhaq exhibited a callous disregard

24  for federal law in general, the automatic stay in particular, and

25  the debtor's rights under the Bankruptcy Code as a Chapter 7

26  debtor. <u>Bloom</u>, 875 F.2d at 228. Moreover, by proceeding in the

27

28                      - 25 -

absence of authority, ASAP Motors and Mr. Abdelhaq acted in bad
faith.  Snowden, 769 F.3d at 657; Sundquist, 566 B.R. at 588.
Therefore, the court concludes that punitive damages are
warranted and appropriate in this case and awards the debtor
punitive damages in the amount of **$15,000.00.**

## V.   Conclusion

Based on the foregoing, the court concludes that ASAP Motors
and Mr. Abdelhaq, jointly and severally, shall be held in
contempt for their willful violations of the automatic stay and
for those willful violations are liable to, and therefore shall
pay, the debtor actual and punitive damages under § 362(k)(1) of
the Bankruptcy Code.  A preliminary determination of those
damages is **$27,278.00.**  This preliminary determination is subject
to further amendment and adjustment based upon a subsequent
determination of the reasonable attorney's fees and costs that
the debtor incurred from August 28, 2018, through and including a
final award remedying all of the aforementioned stay violations
at the conclusion of the attorney's fees and costs proceeding.

Any motion for attorney's fees and costs as an element of
actual damages under § 362(k)(1) shall be filed and served by
**January 4, 2019,** and shall be set for hearing under Local
Bankruptcy Rule 9014-1(f)(1).  Failure to timely file and serve
the motion will result in the forfeiture of attorney's fees and
costs as an element of the debtor's damages and damages in the
amount assessed hereinabove shall become final.

1      The continued hearing on the debtor's motion set for

2  December 4, 2018, at 9:30 a.m. will be vacated.

3      A separate order will issue.

4      Dated:   December 4, 2018.

5

6      _____

7              UNITED STATES BANKRUPTCY JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                        - 27 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Peter L. Cianchetta
8788 Elk Grove Blvd. Ste. 2A
Elk Grove CA 95624

ASAP Motors, Inc.
Watheq Abdelhaq, CEO
4808 Edna Court
Salida, CA 95368

T. Grant & Associates
Tim Grant, CEO
437 N. Pebble Beach Court
Valley Springs, CA 95252